Nov. Term, 1855.

THE INDIANA CENTRAL RAILWAY CO. v. BRADLEY.

PERKINS, J., dissented.

*Per Curiam.*—The decree is affirmed with costs.

*J. M. Flagg*, for the appellant.

*J. B. Howe*, for the appellees.

--------·-◆-·--------

7 | 49
141 | 699

## THE INDIANA CENTRAL RAILWAY COMPANY *v.* BRADLEY and Another.

The power of an arbitrator or referee expires with the return of the award or report into Court, and the report can not afterward be altered.

A referee having made his report to the Court, in favor of the plaintiff, the defendant, more than two months afterward, filed a package of papers in the Court, as containing the evidence which was given before the referee. The affidavits of the persons who took down the evidence were also produced, alleging that it contained substantially all that was given. *Held*, that the package was no part of the report, and that it was not admissible to impeach it.

The result of a trial by jury is called a verdict; by the Court, a finding; by arbitrators, an award; and by a referee or referees, a report.

The report of a referee, by the R. S. 1852, stands precisely like a verdict or finding.

Such report is in the nature of a special verdict, if the facts proved are embodied in it; but if the result only is reported, without the facts or reasoning of the referee, it then partakes of the nature of a general verdict, and stands as such.

A referee, by the R. S. 1852, need not state the facts found by him, and the conclusions of law thereon, separately, unless required so to do by the parties.

A general submission of a cause to a referee, involves a submission of the law and the facts; and the award can only be impeached for the causes allowed by the statute.

VOL. VII.—4

Nov. Term, 1855.

THE INDIANA CENTRAL RAILWAY CO. v. BRADLEY.

The party against whom an award is made, can only, under the R. S. 1852, assign three causes against the rendition of judgment thereon: 1. That the award was obtained by fraud, corruption, partiality, or other undue means, &c. 2. That the arbitrator improperly refused a continuance, or excluded pertinent and material evidence, or was guilty of other misconduct prejudicial to the rights of the party. 3. That the arbitrator exceeded his powers, or so imperfectly executed them that a final award on the subject matter submitted was not made.

*Tuesday, November 27.*

APPEAL from the *Marion* Circuit Court.

STUART, J.—This is an appeal from the judgment of the Court below, rendered on a referee's report. In *April,* 1854, *Bradley* and *Prall* sued the company on a special contract, and also for work and labor, laying their damages in all at 102,000 dollars.

At the *May* term, 1854, of the Circuit Court, the company appeared without process, and the parties filed a written agreement referring the matters in controversy between them. The substance of that agreement is as follows:

It is agreed that all matters in controversy therein, and all matters in controversy between the parties, of every nature and kind whatsoever, shall be referred to the honorable *Charles Dewey*, as referee, who shall hear the cause, and the parties, and their proofs; and whose award and decision shall be final and conclusive in the premises. The award may be made the judgment of the Court, without a *sci. fa.* Then follow sundry provisions relative to the time and place of meeting. The agreement concludes: and the parties waive all pleadings therein, except the complaint, and agree that each party may introduce proof of all matters in controversy between them, whether embraced in the complaint or not.

The parties met, and tried the cause agreeably to the reference. In *September,* 1854, judge *Dewey* made what is called in the agreement to refer, and in the transcript, his award. It is brief and general in its terms. After stating the time and place of meeting and hearing the cause, and that he had taken it under advisement till *September,* the report proceeds: "I find that the defendants, the *Indiana Central Railway Company*, are justly indebted

to the plaintiffs in the sum of 25,692 dollars and 75 cents,
and that the defendants pay that sum, with interest from
this date, and costs, &c.   Given under my hand and seal,
this 29th day of *September*, 1854.  *Charles Dewey*, [seal]."

A copy of the award was duly served upon the railroad
company.   At the next term of the *Marion* Circuit Court,
the parties appeared; and the plaintiffs having moved the
Court for judgment on the award, the company resisted
the motion, assigning the following reasons:

1. That the award was contrary to law.

2. That it was contrary to evidence.

3. That the referee received illegal evidence.

4. That the referee illegally set aside the forfeiture of
the contract declared by *Moore*, the engineer.

The motion of the plaintiffs was sustained, and judg-
ment rendered on the award.   The company appeals.

The first question suggested is, what was before the
referee?   Over what matters in controversy did the agree-
ment of the parties to refer, give judge *Dewey* jurisdiction?
A brief reference to the declaration, and the terms of the
submission itself, will furnish the best answer to these
questions.

The several counts or paragraphs set up a claim for
work done under the contract—for track laying, ballasting,
extra work, damages for sundry delays on the part of the
railroad company, and damages for the wrongful act of
the company in declaring the contract forfeited, when
*Bradley* and *Prall* were not in default.   There is also a
count for interest, and a paragraph of other demands in
the nature of the general money count under the old prac-
tice.   These are all presumed to have been before the
referee and passed upon by him.   In addition, the terms
of submission give a still wider range.   It was agreed that
each party might introduce evidence of all matters in con-
troversy between them, whether included in the complaint
or not.   Under this submission, the jurisdiction of the re-
feree was limited only by the course of evidence, beyond
the matters alleged in the complaint.

There is nothing in the record to which the third and

Nov. Term,
1855.

THE INDIANA
CENTRAL
RAILWAY CO.
v.
BRADLEY.

fourth assignments of error apply; and they need not, therefore, be further noticed. To ascertain whether the report was contrary to law and evidence, we will inquire, what had the Circuit Court to act upon? and to what extent were the proceedings before the referee examinable in that Court?

The railroad company introduced some two hundred pages of manuscript, in different hand-writings, which, it was insisted, contained the substance of the evidence. In support of this position, the attorneys of the company, and the several persons who acted as *amanuenses* of judge *Dewey* in taking notes, were examined. There was, however, no certificate of judge *Dewey* that this was all the evidence adduced before him; nor was he examined on that point as a witness; nor was his absence accounted for; nor did it appear that he had been required to report the evidence; nor does the Circuit Court certify that this manuscript contained all the evidence. The Court allowed it to be read as "the evidence substantially before the referee." The plaintiffs excepted to its admission even in that qualified form. The railroad company insist that it was correctly admitted; and under the second assignment against the award, viz., that it was unauthorized by the evidence, seek to reverse the judgment of the Circuit Court.

It is obvious to remark, that this evidence can not be taken into consideration as a part of the award; for the package of papers containing it was not returned to Court at the same time, or in the same manner, that the award was returned. Judge *Dewey* returned the award, the substance of which we have already given, on the 2d of *October*, 1854. The package of papers which the company insist contained the evidence, was never filed by judge *Dewey* in any manner. Nor were these papers produced even by the company, until *December* 12, 1854, more than two months after the award had been filed. Any paper delivered by the referee with his report, stating his reasons for making it, might, it is said, be considered a part of the award. *Kent* v. *Elstob*, 3 East 18. On this point, how-

ever, the authorities are not uniform. 7 Met. 486. But the power of the arbitrator or referee expires with the return of the award or report into Court; and the report can not afterwards be altered. *French* v. *Moseley*, 1 Litt. 248.—*Lansdale* v. *Kendall*, 4 Dana 613.—*Aldrich* v. *Jessiman*, 8 New Hamp. 516.

Nov. Term, 1855.

THE INDIANA CENTRAL RAILWAY Co. v. BRADLEY.

Hence, the package of papers returned into Court two months after by the railroad company, can not be regarded as any part of the award. To have given it any consideration whatever, it should have been returned by judge *Dewey* with his award; and even then we would not be understood to say that it could be properly admitted, according to the terms of the submission and the requirements of the statute.

We have hitherto spoken of the return made by judge *Dewey* as an *award*. This is the term very generally used throughout the transcript and the argument of counsel. But the word *report* is the statutory term. 2 R. S., s. 350, p. 117. The same result receives different names, corresponding to the different means by which it was attained. Thus the result of a trial by jury is called a verdict; by the Court, a finding; by arbitrators, an award; and by a referee or referees, a *report*. On each of these it is essential that the Court pronounce judgment. The statute provides that the report of the referee shall stand precisely like a verdict or finding. 2 R. S., 117.—*Id.* 233. The report is in the nature of a special verdict, if the facts proved are embodied in it. If the result only is reported, without the facts or reasoning of the referee, then it partakes of the nature of a general verdict, and stands as such. 2 R. S., *supra.*—*Alexander* v. *Fink*, 12 Johns. R. 218.— *Barnard* v. *Spofford*, 31 Maine R. 39.—*Holmes* v. *Slocum*, 6 Practice R. 218.—*Dederick* v. *Richley*, 19 Wend. 108.

But under the statutory provisions of some of the states, as in *New-York*, for example, the referees must report both the facts and the law applicable thereto. Code, sec. 272.— *Vansteenburg* v. *Hoffman*, 6 Practice R. 492.—*Deming* v. *Post*, 1 *id.* 121. Under our statute, a different practice is to be pursued, as will presently be seen.

Nov. Term, 1855.

THE INDIANA CENTRAL RAILWAY CO. v. BRADLEY.

The act out of which these general observations grow, and to which the cases cited are applicable and expository, reads thus:

"SEC. 349. All or any of the issues in the action, whether of fact, or of law, or both, may be referred upon the written consent of the parties.

"SEC. 350. The trial by referees is conducted in the same manner as a trial by the Court. They have the same power to grant adjournments as the Court upon such trial. *If required they must state the facts found and the conclusions of law separately,* and their decision must be given, and may be excepted to and reviewed, in like manner. The report of the referees on the whole issue, stands as the decision of the Court, and judgment may be entered thereon in the same manner as if the action had been tried by the Court. When the reference is to report the facts, the report has the effect of a special verdict." 2 R. S. 116.

There is a further reference to the subject, under the head of "arbitrations." But it does not materially differ from that quoted.

Thus section 24 provides, that when the report is returned, it shall be entered on the order book, and shall be of the same effect, and be deemed and taken to be as available in law, as the verdict of a jury. The 25th section again repeats that judgment may be entered on the report, in like manner, and with the same force and effect, as on the verdict of a jury. 2 R. S. 233.

The report of judge *Dewey,* in the case at bar, is therefore equivalent to a verdict, and is to be treated as such. It is also in the nature of a general verdict, and subject to its incidents, as distinguished from a special verdict. And in this the referee conformed strictly to the statute. For he was not bound to "state the facts found and the conclusions of law separately," *unless required by the parties.* Section 350, *supra.* Nor was the reference simply to report the facts, and thus render the report in effect a special verdict under the last clause in the same section. The submission was general; and such submission, according to the

authorities, involved a submission of the law and the facts. It was, in the language of the statute, a trial of "the whole issue," and as it is designated in the 350th section, *supra*, the result stands as "the finding of the Court;" or, in section 24, *supra*, as "the verdict of a jury." A similar form of expression received a like construction in *McKinney* v. *Pierce*, 5 Ind. 422.

That such general submission involves a submission of both the law and the facts, is fully sustained by the authorities. At common law, a reference was the sending any matter by the Court of Chancery to a master, or by the law Courts to a prothonotary, to examine and report thereon. 3 Toml. Law Dic. 317. But a referee, under the statute, is not a mere master in chancery, to hear and report testimony. *Barnard* v. *Spofford*, 31 Maine R. 39. "He is a legislative substitute for a jury. Consequently the report of the referee is to be regarded in the same light as the verdict of a jury." *Alexander* v. *Fink*, 12 Johns. R. 218. It is in general conclusive as to the law and the facts of the case; *Fidler* v. *Cooper*, 19 Wend. 285; *Boston Water Power* v. *Grey*, 6 Metcalf 131; *Kleine* v. *Catara*, 2 Gallison 61; unless it can be impeached for fraud, mistake, or accident. The mistakes of arbitrators, and, by parity of reasoning, referees, in drawing conclusions from facts or observation, or in adopting erroneous rules of law or theories of natural philosophy, are not sufficient to set aside their award. 6 Metcalf, *supra*. Thus, when it appeared that arbitrators had acted upon certain hydraulic principles in settling the measure of a particular water power, it was not permitted the party objecting to the award, to show that the principles of the hydraulic theory on which they had proceeded were erroneous. 6 Met., *supra*. A referee may even adopt equitable principles in order to reach the justice of the particular case, and unless it appear that they have been misapplied, or he has been misled in their application, his report will be sustained. *Downer* v. *Downer*, 11 Vt. 395.—*The State* v. *Stewart*, 12 Gill & J. 456.—*Kleine* v. *Catara*, 2 Gallison 61. Under a general submission, the parties are presumed to submit

Nov. Term, 1855.

THE INDIANA CENTRAL RAILWAY CO. v. BRADLEY.

both the law and the fact, and the referee is fully empowered to determine both conclusively, unless there be fraud or mistake. 2 Gallison, *supra.* In the case of *Myers* v. *The York and Cumberland Railroad Co.,* one of the judges of the Supreme Court of the *United States* holds this language, in a case, too, involving the validity of the report of a referee, very similar in many of its leading features to that at bar. "Upon the conclusiveness of the judgment of the referee, to whose decision the parties have voluntarily submitted their case, we are equally clear. Unless we overrule the decision of Mr. Justice *Story* in *Kleine* v. *Catara,* 2 Gall. 61, we must hold that the judgment of the referee, upon all questions of law and fact necessary to a determination of the matter submitted to him, is final. and binding on the parties, in the absence of fraud, and under regular proceedings in which no improper conduct is alleged. We are satisfied of the correctness of this rule."

The same rule prevails in *England,* and did prevail in this state up to 1811, by statute in both instances. 2 Tidd's Prac. 750.—*Hamilton* v. *Wort,* 3 Blackf. 68. From 1811, through all the revisions up to 1838 inclusive, the party showing cause against an award, was at "liberty to introduce evidence to show mistake either in matters of law or of fact." 3 Blackf., *supra.* The revision of 1852, under which this proceeding was had, is almost a literal copy of chapter 44, R. S. 1843, on "arbitrations." These revisions again change the rule, recognizing but three causes which the adverse party may show against the rendition of judgment upon the award, viz.:

1. That the award was obtained by fraud, corruption, partiality, or other undue means, &c.

2. That the arbitrator improperly refused a continuance, or excluded pertinent and material evidence, or was guilty of other misconduct prejudicial to the rights of the party.

3. That the arbitrator exceeded his powers, or so imperfectly executed them that a final award on the subject matter submitted was not made. 2 R. S., p. 231.—R. S. 1843, p. 789.

There is a further provision in relation to the power of the Court to correct an award, when there is an evident mistake in figures, or in descriptions, or in any mere formal matter not affecting the controversy. 2 R. S., p. 231. But this latter provision has no application to the case at bar.

The decisions of this Court on the point under discussion, made upon the act of 1811, and the similar subsequent enactments, are also clearly inapplicable, and need not be noticed. The case of *Huss* v. *Turner*, 2 Ind. R. 217, is an adjudication under the revision of 1843; but no allusion is made to the change in the law. The same is true of the cases in 3 Ind. R. 277, and 4 *id.* 248, 273.

So that there is no decision of our own Court, on the subject of arbitration or reference, inconsistent with the view above indicated.

In addition to the authorities cited, there are several leading cases on this point in the *Massachusetts* reports. In *Jones* v. *The Boston Mill Co.*, 6 Pick. 148, it was held, that when all questions in dispute are referred, the decision of the referee is conclusive as to matters of law as well as of fact. It is further held, that the Court can not exercise any revisory power, unless the referee expressly reserve the questions of law for such consideration.

So in *Bigelow* v. *Newell*, it was held, that an award was conclusive as to matters of law passed upon by the arbitrators; and that, too, though the submission contained a provision that regard should always be had to the legal rights of the parties. 10 Pick. R. 348. There is a yet stronger and more recent case, in the same reports. Where, under a general submission, the arbitrator, at the instance of one of the parties, reported the evidence on which he made his award, expressly declaring, however, that he did not report the evidence with any intention of submitting the matters arbitrated to the revision of the Court, it was held, that the Court could not inquire whether he had decided correctly the several questions of law or of fact which the case involved. *Ward* v. *The American Bank*, 7 Met. 486.

A distinction was formerly made as to the calling of the referee. If the reference was to a lawyer, the parties

Nov. Term,
1855.

The Indiana
Central
Railway Co.
v.
Bradley.

were presumed to intend, in the absence of anything to the contrary, that he should decide the law arising in the case. Did that rule still prevail, the selection of so eminent a lawyer as judge *Dewey*, would leave no doubt of the intention of the parties. But the modern cases, says judge *Shaw*, in 7 Metcalf, *supra*, "have tended to remove that distinction as to the calling of the referee, and extended the same presumption to all cases, viz., that whenever parties authorize the referee to judge of their respective rights, they necessarily confer on him the power to decide the questions of law upon which those rights depend, and therefore that his report shall be conclusive." In the case at bar, the parties have clothed the referee with the most ample powers, by expressly agreeing that "his decision, on all the matters in controversy, shall be final and conclusive in the premises."

Of course fraud in the opposite party, or in the referee, or in case of his reporting the facts proved before him, a reference of the law arising on them to the Court, would be exceptions to the rule.

But it is doubted by very high authority, whether if a motion were made to call on the referee to testify to the facts and grounds upon which he gave his judgment, in order to enable the Court to decide as to the correctness of his inferences of fact and conclusions of law, such a motion should be allowed; though it should be stated that this point was not before the Court. 7 Met. 491.—6 *id.* 131. As a *dictum*, however, it is said to be "founded upon the most recent and satisfactory decisions."

We are therefore of opinion, that the package of papers admitted in the Court below as substantially the evidence before the referee, was not legitimately before the Circuit Court. But though the admission of such package as evidence was error, it is not one of which the railroad company have any right to complain. It was admitted at their instance, and, so far as it could operate, it must be to favor their views.

When a case is thus referred, under the R. S. of 1852, there does not seem to be more than one way of bringing

the facts before the Court, viz., by one or both of the parties requiring the referee to report the facts found and the conclusions of law separately. Then, upon exceptions taken, the Court will review the decision of the referee, in like manner and under the same regulations, as they would their own proceedings on a motion for a new trial. Section 350, 2 R. S., p. 116.

But the judgment of the Circuit Court being right on the whole case made, must be affirmed. There was properly nothing before that Court but the report of the referee, against which no irregularity, or fraud, or other available objection was urged. And there is nothing before us but the record of the case, excluding the package of evidence improperly admitted. In that record, thus presented, we can discover no substantial defect.

*Per Curiam.*—The judgment is affirmed, with 1 per cent. damages and costs.

*C. H. Test, H. C. Newcomb* and *J. S. Harvey,* for the appellants.

*S. Yandes, J. L. Ketcham* and *J. H. Bradley,* for the appellees.