LEWIS WILLIAMS, Respondent, *v.* THE FIREMAN'S FUND INSURANCE COMPANY, Appellant.

The ordinary provision in a policy of fire insurance, prohibiting the storing or keeping of certain hazardous articles, has reference to a storing or keeping, in a mercantile sense, in considerable quantities, with a view to commercial traffic, or when storing and safe-keeping is the sole or principal object of the deposit; not where the keeping is incidental, and only for the purpose of consumption. The keeping of such an article in small quantities, for use as a medicine, is not within the prohibitions of such a policy, and does not avoid it. (GRAY, C., dissenting.)

*It seems*, also, that a restriction against using certain inflammable fluids for light, does not apply to a lamp used in a sleeping apartment, but to the use of such fluids as a light for stores, warehouses, shops and manufactories. (REYNOLDS, C.)

(Argued September 20, 1873; decided January term, 1874.)

APPEAL from judgment of the General Term in the first judicial department, affirming a judgment in favor of plaintiff entered upon a verdict.

This action was brought upon a policy of insurance, dated December 6, 1867, issued by defendant for $2,500; $200 on office furniture and fixtures, and $2,300 on merchandise, hazardous and extra hazardous. The property insured was damaged by a fire occurring May 31, 1868. The substance of the policy and the facts are sufficiently set forth in the opinions.

*Samuel Hand* for the appellant. The continued user of the premises for the keeping of crude petroleum, as kept and used by plaintiff, was prohibited by the policy. (2 Laws of 1866, p. 2041, § 51; *Jones* v. *Firemen's F. Co.*, 51 N. Y., 318; *Hynes* v. *Schenectady Mut. L. Ins. Co.*, 1 Kern., 561;

Ure's Dic. of Arts, etc. [Am. ed.], 1866, tit. "Naphtha or Rock Oil.") The use of benzine for illuminating purposes was contrary to the prohibition of the policy. (Supp. to Ure's Dic. of Arts, etc. [Am. ed.], 1864, tit. "Benzole, syn. Benzine," etc.) These violations of the policy deprived the contract of insurance of any force or effect. (*Duncan* v. *Sun F. Ins. Co.*, 6 Wend., 493, 494; *Gates* v. *Mad. Co. Mut. Ins. Co.*, 1 Seld., 469; *Mead* v. *N. W. Ins. Co.*, 3 id., 530; *West* v. *H. R. Ins. Co.*, 2 Kern., 289; *Jones* v. *F. F. Ins. Co.*, 2 Daly, 307; affirmed, 51 N. Y., 318; *Judson* v. *Cont. Ins. Co.*, 38 N. Y., 364.) The clauses of the policy in question are express warranties, and the consequence of their violation is to avoid the policy. (*Duncan* v. *Sun F. Ins. Co.*, 6 Wend., 493, 494; *Gates* v. *Mad. Co. M. F. Ins. Co.*, 1 Seld., 469; *Mead* v. *N. W. Ins. Co.*, 3 id., 530.) A condition in an insurance policy, if not complied with, defeats the policy, whether the non-compliance be with or without the act or privity of the assured. (1 Arn. Ins., 577, 586, chap. 3, § 1; 1 Phil. Ins., chap. 9, § 10, p. 410; *Jeff. Ins. Co.* v. *Cotheal*, 7 Wend., 80, 81; *Fowler* v. *Etna F. Ins. Co.*, 6 Cow., 676; S. C., 7 Wend., 274; *Tyler* v. *Etna F. Ins. Co.*, 12 id., 514; S. C., 16 id., 400.)

*Jno. E. Parsons* for the respondent. Forfeiture clauses in a policy should be construed with a view to sustain, not to defeat the policy. (*Hoffman* v. *Etna F. Ins. Co.*, 32 N. Y., 405; *Catlin* v. *Spring. F. Ins. Co.*, 1 Sumner, 434; *Reynolds* v. *Coml. F. Ins. Co.*, 47 N. Y., 597.) Keeping a quantity of kerosene or crude oil for medicinal use did not violate that provision of the policy which forbade such articles to be stored on the premises. (*N. Y. Eq. Ins. Co.* v. *Langdon*, 6 Wend., 623.) The occasional presence of the prohibited articles does not vitiate the policy; the presence must be such as to constitute a use of the building, or a storage, as applied to a storage warehouse. (*N. Y. Eq. Ins. Co.* v. *Langdon*, 6 Wend., 623; *Rafferty* v. *N. B. F. Ins. Co.*, 3 Harr., 480; *Moore* v. *Pro. Ins. Co.*, 29 Me., 97; *O'Neill* v. *Buff. F. Ins.*

*Co.*, 3 Com., 122 ; *Hynds* v. *Schen. Co. F. Ins. Co.*, 16 Barb., 119 ; affirmed, 1 Ker., 554 ; *Vogel* v. *Peo. Mut. F. Ins. Co.*, 9 Gray, 23 ; *Mayor, etc., of N. Y.* v. *Hanover Ins. Co.*, 10 Bosw., 557.)

REYNOLDS, C.   On the 6th of December, 1867, the defendant insured the plaintiff in the sum of $2,500, for one year, on office furniture and fixtures, and merchandise, hazardous and extra hazardous, contained in the building situate at Nos. 307 and 309 on Broadway, in the city of New York.   It was provided in the policy, that if the premises should be used for the storing or keeping therein any articles, goods or merchandise, denominated hazardous or extra hazardous or specially hazardous, except as specially provided for in the policy, so long as the same continued the policy was to be of no force.   There was a further provision, that " if petroleum, rock oil, earth oil, benzole, benzine or naphtha, shall be stored in said premises without written permission therefor indorsed on this policy, this policy shall be absolutely null and void."

Another clause in the policy provided that " the following trades, occupations and merchandise add to the rate of the building and its contents fifty cents or more per $100, and, to be covered, must be specially written in the policy : burning fluid, camphene."   Also, " camphene, spirits, gas or ' burning fluid,' or any similar inflammable fluid when used in stores, warehouses, shops or manufactories as a light, subjects the goods therein to an additional charge, and such use renders this policy void, unless permission therefor shall be indorsed in writing hereon."

There was also the common provision that, in case the risk should be increased by any means within the control of the insured, or by the occupation of the premises for more hazardous purposes than permitted by the policy, then the policy should be void.

A motion for a nonsuit on the trial was denied, and upon the close of the evidence the case was submitted to the jury, and a verdict returned for the plaintiff.

The defence was rested upon the fact that the plaintiff, who had been in the army during the late war, and had received a gun-shot wound resulting in a cutaneous disorder, which he treated by an application of crude petroleum oil to the surface of his body.  For this purpose, the plaintiff kept crude petroleum in a jug upon a shelf in his room, and some quarts of it were in the building at the time of the fire, and with it a shirt and pair of drawers, which the plaintiff had worn after applying the oil, were found the morning after the fire. They had not been touched by the fire which occurred on the night of January 31st, 1868, and it is not claimed they, in any way, contributed to it; but this circumstance is quite immaterial, if having petroleum there in any quantity and for any purpose violated the contract of insurance.

It is very clear that, when the policy was written, no one understood that the keeping of petroleum oil for merely medicinal purposes, would render void the obligation of the defendant.   The provision against "storing or keeping" was obviously aimed at storing or keeping in a mercantile sense, in considerable quantities, with a view to commercial traffic.   It was not intended to forbid its use as a medicine.   It might as well be claimed that if the plaintiff went to his medical adviser and had his shirt and drawers saturated with petroleum, with a view to the peaceful repose of a night, and brought them to bed on the insured premises, or if, indeed, he had taken a quantity internally, for a like purpose, it would have been a "keeping or storing" within the meaning of the policy.   The cases in the courts, in principle, against the construction contended for by the defendant, are quite too numerous to authorize us to disturb the judgment of the court below. (*Hoffman* v. *The Ætna Fire Ins. Co.*, 32 N. Y., 405; *Reynolds* v. *Commerce Ins. Co. of N. Y.*, 47 id., 597; *Cotton* v. *Springfield Ins. Co.*, 1 Sumner, 434; *N. Y. Equitable Ins. Co.* v. *Langdon*, 6 Wendell, 623.)

The point, that the plaintiff had, during the life of the policy, used some inflammable fluid for light, does not appear to have the slightest foundation.   The restriction clearly did

not apply to using a light in a sleeping apartment, but only to the use of camphene, etc., as a light for stores, warehouses, shops and manufactories. Besides, the plaintiff's evidence indicates that he had not used any forbidden light during the life of the policy, and, as the defendant on the trial did not ask to have any such question of fact submitted to the jury, it may be assumed that counsel then thought, as we think now, that there was nothing in the point.

The judgment must be affirmed, with costs.

EARL, C. The proof was not clear and certain that camphene was used as a burning fluid during the life of the policy, and hence there was no ground for dismissing the complaint on account of its alleged use.

The plaintiff kept a small jug of crude petroleum in his room for occasional use in anointing his person, and it is alleged that this was a violation of the provision in the policy against storing petroleum upon the premises insured, and hence that the complaint should have been dismissed. The motion to dismiss the complaint, upon this ground, was properly denied for two reasons: 1. No such defence was set up in the answer; 2. Petroleum was not stored within the meaning of the policy. It is not enough that the petroleum was upon the premises; the premises must have been used and appropriated for storing it. In *N. Y. Equitable Ins. Co.* v. *Langdon* (6 Wend., 627), Judge SUTHERLAND says: "It appears to me that the word 'storing' was used by the parties in this case in the sense contended for by the plaintiff, viz.: a keeping for safe custody, to be delivered out in the same condition, substantially, as when received, and applies only when the storing or safe keeping is the sole or principal object of the deposit, and not when it is merely incidental, and the keeping is only for the purpose of consumption." In *O'Niel* v. *The Buffalo Fire Ins. Co.* (3 Com., 122), it was held that oil and turpentine, brought into a house for the purpose of painting it, were not stored therein within the meaning of a clause in the policy prohibiting the storing of such articles. In

*Mayor, etc., of New York* v. *The Hamilton Fire Ins. Co.*
(10 Bosw., 537), it was held that the keeping of articles to be
exhibited, or to be used as means and instruments of the exhi-
bition, is not a use of the building " for the purpose of storing
or keeping therein " such articles within the meaning of a
clause in an insurance policy against storing and keeping such
articles. In *Hynds* v. *Schenectady Co. Mutual Ins. Co.* (11
N. Y., 554), it was held that a condition in a policy against
using the premises insured for storing or keeping, among other
things, flax, was not violated by the fact that a small quantity
of flax happened to be left upon the premises. These authori-
ties are sufficient to show that the premises were not, in
this case, within the just meaning of the policy, used for
storing petroleum.

The judgment must, therefore, be affirmed, with costs.

GRAY, C. (dissenting). It is a part of the statute law of
this State, that " no person shall keep upon sale, or store in
any place or building within the corporate limits of the city
of New York, any crude petroleum, earth or rock oil, or any
of its products," except under certain stated provisions. (2d
vol. Sess. Laws, 1866, 2141, § 51.) The policy upon which
this action was brought and the judgment appealed from
recovered, was " $200 on office furniture and fixtures, $2,300
on merchandise, hazardous and extra hazardous," and con-
tained in a building situate Nos. 307 and 309 Broadway,
New York. One of the provisions of the policy was, that
" whenever gunpowder or any other article subject to legal
restriction should be kept on the premises in quantities
greater than the laws allows, or in a manner different from
that prescribed by law," should render the policy void, unless
the *use or keeping* should be specially provided for in the
policy. The plaintiff's business consisted in going about and
obtaining orders for his goods, keeping and delivering them
from and occasionally making sales of them in a room in the
third story of the building mentioned in the policy,
which room he also used as a sleeping apartment when in the

city.   He was an invalid, and kept constantly on hand, in the room thus occupied by him, a quantity of crude petroleum oil contained in a gallon jug, which he frequently used to bathe himself by rubbing it over his entire person, insomuch that certain of his wearing apparel which he kept upon the premises became saturated with it.   This oil was not kept by him under any of the exceptions in the statute, nor was its *use or keeping* specially provided for in the policy.   At the time of the fire there was about two quarts of this oil in the jug, which sat in a part of the room not reached by the fire. It is claimed that, because the statute prohibited only the keeping on sale or in store crude petroleum, the prohibition did not include the use or keeping for the purposes to which it was applied by the plaintiff.   The answer is, that notwithstanding the article was under legal restriction only so far that no person was allowed to keep it upon sale or in store within the corporate limits of New York, yet in this case the parties by the contract went farther, and in substance agreed that if the articles thus restricted from being kept on sale or in store should be kept on the premises, the policy should become void, unless in it the use or keeping should be specially provided for.   Keeping it upon sale or in store, is not what is understood, a use of it or a keeping it for use. A provision to insure property against loss kept in an apartment in which, by the terms of the contract, the assured should be permitted to keep on sale or in store prohibited articles, being in contravention of law, would be void.   If, therefore, the provision made by the parties had not reference to the keeping for use and not to keeping it on sale or in store, it was needless and without force or effect.   A provision in a contract is not to be thrown out of consideration because by a forced construction of the contract it may seem needless, if by a reasonable construction force and effect can be given to it.   The rule for construing statutes applies with equal force to the construction to be given to contracts.   In statutes " every clause and word should be presumed to have been intended to have some force and effect " (Supplement,

22 Pick., 573), and should be so construed, if possible, that no word should be superfluous, void or insignificant. (*Hutchen* v. *Noble,* 4 Blackf., 148.) Adopting this rule, it is not merely difficult but impossible to give effect to the language used, without holding that keeping and using upon the premises an article which by statute every one was prohibited from keeping on sale or in store, rendered the policy void. But it is claimed that as the quantity kept was small and limited in its use to medicinal purposes, it did not come within the provision rendering the policy void, unless the use or keeping of such article was in the policy specially provided for. The quantity kept was contained in a gallon jug, and the amount on hand when the fire occurred was about two quarts. If the fire had occurred in the use of this oil, no one, I think, would have concluded that the quantity in use was so inconsiderable that it was harmless; or if the fire had reached and come in contact with it, that it would not have contributed to and materially increased the damage sustained. That it was kept for medical purposes is no more an answer to the allegation that its use or keeping vitiated the policy, than it would be if kept for any other use and not in a quantity so small or harmless that the law would not care for it. I do not mean to be understood that the use of or keeping a hazardous article, which by the terms of the policy is to render it void unless specially provided for in the policy, may be (unless casually) kept or used upon the premises in any quantity, whether material to the risk or not, without vitiating the policy. A reversal of the judgment appealed from does not involve that question. The judgment appealed from, as well as the judgment rendered at circuit, should be reversed and a new trial ordered.

All concur for affirmance, except GRAY, C., dissenting.

Judgment affirmed.